UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHRISTOPHER R. BUCHANAN,

  Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

  Defendant.

Case No. 3:13-cv-307

District Judge Walter Herbert Rice
Magistrate Judge Michael J. Newman

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

  This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's memorandum in opposition to Plaintiff's Statement of Errors (doc. 13), Plaintiff's reply (doc. 15), the administrative record (doc. 7),[3] and the record as a whole.

---

  [1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

  [2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

  [3]Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

I.

A. **Procedural History**

Plaintiff previously applied for SSI and DIB on December 14, 2006, alleging a disability onset date of November 17, 2006. PageID 96. After initial denial of his claims, Plaintiff received a hearing before ALJ Carol K. Bowen on March 22, 2012. See PageID 96. On January 8, 2010, ALJ Bowen -- despite finding Plaintiff suffered from the severe impairments of arthralgias, gout, obesity, depression, anxiety, and borderline intellectual functioning ("BIF") -- issued a written decision finding Plaintiff not disabled as of that date, and thus denying Plaintiff benefits. PageID 96-109. The Appeals Council denied review, and Plaintiff did not challenge that finding on appeal. PageID 74.

Plaintiff filed the subject applications for DIB and SSI on March 5, 2010, this time alleging a disability onset date of January 1, 2006. PageID 194-98. In his applications for benefits, Plaintiff alleged to suffer from the following physical and mental conditions, among others: depression; anxiety; obesity; osteoarthritis; gout; and a learning disability. PageID 224.

After initial denial of his claims, Plaintiff received a hearing before ALJ Amelia G. Lombardo on March 22, 2012. PageID 72-92. ALJ Lombardo issued a written decision on April 24, 2012 finding Plaintiff not disabled. PageID 52-65. Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: arthralgias;[4] gout by diagnosis without recent outbreak; borderline intellectual functioning (BIF) by diagnosis; depression; and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity [("RFC")] to perform medium work[5] as defined in 20 CFR 404.1567(c) and 416.967(c) subject to the following restrictions and limitations: occasional kneeling; occasional climbing ladders, ropes, or scaffolds; simple, repetitive tasks with no assembly line production quotas and not fast paced; no contact with groups; and occasional contact with co-workers and supervisors.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] . . . 1967, and was 38 years old, which defined her as a younger individual, age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[4] "Joint pain is sometimes called arthritis or arthralgia." Mayoclinic.org, Joint Pain Definition, http://www.mayoclinic.org/symptoms/joint-pain/basics/definition/sym-20050668 (last visited Feb. 3, 2015).

[5] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Very heavy work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." *Id*. § 404.1567(e). An individual who can perform very heavy work is presumed also able to perform heavy, medium, light, and sedentary work. *Id*. Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id*. § 404.1567(d). An individual who can perform heavy work is presumed also able to perform medium, light, and sedentary work. *Id*. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id*. § 404.1567(c). An individual who can perform medium work is presumed also able to perform light and sedentary work. *Id*. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id*. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. § 404.1567(a).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.964).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 55-64.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 33-37. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B. **Evidence of Record**

The ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 52-65. Plaintiff, in his Statement of Errors, references certain evidence in the administrative record in support of his arguments. Doc. 11 at PageID 469-93. The Commissioner's memorandum in opposition sets forth a detailed recitation of evidentiary record. Doc. 13 at PageID 500-04. Except as otherwise stated in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence. Where applicable, the Court will identify the medical evidence relevant to this decision.

II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable"

and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In his Statement of Errors, Plaintiff argues that ALJ Lombardo: (A) despite considering evidence evaluated by ALJ Bowen in relation to Plaintiff's previous application for disability, failed to specifically state whether or not she reopened ALJ Bowen's decision, thus rendering her decision unclear so as to allow meaningful review: (B) improperly applied the doctrine of administrative *res judicata* as set forth in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th

Cir. 1997); (C) failed to properly assess Plaintiff's RFC and weigh medical source opinions; and (D) erred in assessing his credibility. Doc. 11 at PageID 474-93.

      A.     *Drummond* **and the ALJ's RFC Determination**

Finding error with regard to ALJ Lombardo's application of *Drummond* and her RFC determination, the undersigned addresses Plaintiff's second and third assignments of error[6] at the outset. *Drummond* instructs that -- where, as here, two ALJs have reviewed Plaintiff's disability applications -- the Commissioner is bound by the first ALJ's findings, unless new evidence or changed circumstances require a different finding. *Drummond*, 126 F.3d at 842. "[A]n improvement in a claimant's condition" is a changed circumstance that would not bind an ALJ to a previous RFC determination. *Id*. at 842.

A significant part of Plaintiff's argument in this regard is the discrepancy between the severe impairments previously found by ALJ Bowen and those determined thereafter by ALJ Lombardo. Doc. 11 at PageID 480. Specifically, ALJ Bowen concluded in January 2010 that Plaintiff "has the following severe impairments: arthralgias status post motor vehicle accident; gout; obesity; depression; anxiety and borderline intellectual functioning[.]" PageID 98. ALJ Lombardo determined that Plaintiff "has the following severe impairments: arthralgias; gout by diagnosis without recent outbreak; borderline intellectual functioning (BIF) by diagnosis; depression; and anxiety[.]" PageID 55.

The significant difference between the two ALJ determinations is that ALJ Lombardo found Plaintiff's severe gout impairment was "without recent outbreak" and his severe BIF impairment was "by diagnosis[.]'" PageID 55, 98. ALJ Lombardo omitted Plaintiff's obesity as a severe impairment. *Id*. The undersigned finds error in ALJ Lombardo's failure to consider

---

      [6] Plaintiff, in his third assignment of error, not only challenges ALJ Lombardo's RFC determination, he also challenges her assessment of medical source opinions. Doc. 11 at PageID 485-91.

Plaintiff's obesity as a severe impairment, or in evaluating obesity when discussing Plaintiff's RFC. Finding the ALJ's omission of Plaintiff's obesity from her decision dispositive of Plaintiff's alleged error in this regard, the undersigned makes no determination with regard to the ALJ's use of modifiers to describe Plaintiff's severe gout and BIF impairments.

ALJ Bowen previously found Plaintiff to be obese based upon the fact that "he is 65 inches tall and weighs 200 pounds." PageID 100. Certainly, such facts did not change with regard to the unadjudicated period at issue in ALJ Lombardo's decision; ALJ Lombardo specifically noted that Plaintiff is "5'5" tall and weighs over 200 pounds."[7] PageID 55. In the absence of changed circumstances, ALJ Lombardo was bound by ALJ Bowen's conclusion that Plaintiff's obesity was a severe impairment. *Cf. Perkins v. Comm'r of Soc. Sec.*, No. 1:13-cv-102, 2014 WL 1872119, at *2 (S.D. Ohio May 8, 2014) (citing *Drummond*, 126 F.3d at 842). The undersigned's thorough review of the record reveals that Plaintiff's weight actually increased, *see* PageID 449, thus demonstrating a worsening of the impairment. ALJ Lombardo's failure to identify Plaintiff's obesity as a severe impairment violates the principles of administrative *res judicata*, and is error. *See Kennedy v. Astrue*, 247 F. App'x 761, 767-68 (6th Cir. 2007) (finding reversible error in the ALJ's application of *Drummond* with regard to claimant's obesity impairment where the ALJ failed to make the necessary "comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review"); *cf. Perkins*, 2014 WL 1872119, at *2.

---

[7] In fact, the record reveals that, on February 21, 2012 -- approximately one month before ALJ Lombardo's hearing -- Plaintiff weighed 209 pounds and had a body mass index ("BMI") of 34.78 kg/m2. PageID 449. "The Clinical Guidelines recognize three levels of obesity," and Plaintiff's BMI at that time placed him in the very upper portion of Level I (BMI 30.0 - 34.9), and on the verge of Level II "'extreme' obesity" (BMI 35.0 - 39.9). *See* SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). The undersigned notes that, whether "extreme obesity" or not, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." *Id*. at *4.

While the Commissioner could argue the proposition that no reversible error is committed at Step Two where the ALJ determines the claimant has at least one other severe impairment, and then considers all of the claimant's other alleged impairments in the subsequent steps of the disability evaluation, *see Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987), here, ALJ Lombardo not only failed to mention Plaintiff's obesity at Step Two, she also failed to consider -- or even mention -- Plaintiff's obesity "in the remaining steps of the sequential analysis." *Mish v. Comm'r of Soc. Sec.*, No. 1:09-cv-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); *see also Kennedy*, 247 F. App'x at 767-68; *Auflick v. Astrue*, No. 2:12-cv-29, 2012 WL 4364243, at *7 (S.D. Ohio Sept. 24, 2012).

Because "[i]ndividuals with obesity may have problems with the ability to sustain a function over time[,]" an ALJ must assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity with the work environment." *See* Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *6. As a result, SSR 02-1p requires that an ALJ "must consider the impact of a claimant's obesity on her [RFC]." *Auflick*, 2012 WL 4364243, at *6. In fact, "some analysis of the aggravating tendencies on function caused by obesity, in conjunction with and upon all other severe impairments . . . must be performed." *Stone v. Comm'r of Soc. Sec.*, No. 3:13-cv-197, 2013 WL 5424772, at *2 (S.D. Ohio Sept. 26, 2013) (Rice, J.). Having failed to consider Plaintiff's obesity at Step Two and having failed to consider its impact on Plaintiff's ability to perform work-related activities, the undersigned concludes that ALJ Lombardo's RFC finding is not supported by substantial evidence, and should be reversed.

B.     Clarity Regarding Reopening

In his first statement of error, Plaintiff argues that ALJ Lombardo's decision is unclear and, therefore, violates Supreme Court precedent requiring clear agency decisionmaking. *See S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (stating that "[i]f the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable").  Plaintiff contends that ALJ Lombardo violated the clarity requirement because, although it appears that she "simply adopt[ed] ALJ Bowen's prior findings through the date of [her] decision of January 8, 2010, and adjudicat[ed] the period subsequent, she has not said so and her decision is unclear on this point[.]"  Doc. 11 at PageID 476.  Plaintiff argues that, although she purports to consider only the unadjudicated period commencing after ALJ Bowen's decision, ALJ Lombardo constructively reopened the application previously adjudicated by ALJ Bowen.

"When the same claim has been presented in successive applications, the ALJ may choose to apply the doctrine of 'administrative *res judicata*.'" *Crady v. Sec'y of Health and Human Servs.*, 835 F.2d 617, 620 (6th Cir. 1987) (citing 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1)).  An ALJ also possesses authority to reopen "prior determinations otherwise final because of [a claimant's] failure to appeal." *Id*. (citing 20 C.F.R. §§ 404.987, 416.1487).  Even in the absence of an "express statement" that the ALJ has reopened a prior final agency adjudication, such adjudication can be "constructively reopened" where the ALJ: (1) makes an "extensive analysis" of evidence at issue in the prior agency decision; (2) makes no reference to the prior adverse determination; and (3) "does not refer to *res judicata*[.]" *Id*.

The undersigned agrees with Plaintiff that ALJ Lombardo's decision is not entirely clear as to whether she reopened ALJ Bowen's decision.  The Court notes, however, that ALJ

10

Lombardo confirmed with Plaintiff's counsel at the beginning of the administrative hearing that the applicable period "in question" was a period beginning after the "decision . . . issued . . . on January 8th, 2010, which was affirmed by the Appeals Council." PageID 74. In addition, ALJ Lombardo referenced ALJ Bowen's prior decision and discussed the application of administrative *res judicata* several times in her decision. PageID 52, 60-61. The administrative record in this regard suggests that ALJ Lombardo only considered the unadjudicated period commencing after ALJ Bowen's decision.

ALJ Lombardo did, however, significantly reference evidence considered and conclusions rendered by ALJ Bowen in her decision; although it appears she only incorporated by reference some findings made by ALJ Bowen -- such as ALJ Bowen's conclusions regarding the opinions of S.S. Patil, M.D., PageID 56 -- without reconsidering the merits. *See King v. Chater*, 90 F.3d 323, 325 (8th Cir. 1996) (stating that "[m]ere consideration of evidence from an earlier application is not considered a reopening of the earlier claim"); *see also Walker v. Barnhart*, 258 F. Supp.2d 693, 699 (E.D. Mich. 2003). In other circumstances, however, such as with regard to assessing Plaintiff's BIF, ALJ Lombardo appears to have considered evidence considered by ALJ Bowen -- such as the fact that Plaintiff "graduated from high school and took no special education classes" -- to minimize the severity of Plaintiff' BIF. *See* PageID 59, 105.

While it thus appears that ALJ Lombardo did not constructively reopen Plaintiff's previous application for benefits adjudicated by ALJ Bowen, the record is not clear in this regard. The undersigned, while not determining that error occurred concerning this lack of specific clarity, would direct that, on remand, the ALJ specifically clarify whether he or she is reopening Plaintiff's prior application or whether she is merely considering the unadjudicated period, *i.e.*, Plaintiff's disability status after January 8, 2010.

C.     **Medical Source Opinions**

In his third assignment of error, Plaintiff argues that the ALJ erred in discounting the opinions of treating physicians S.S. Patil, M.D.[8] and Latha Venkatesh, M.D.; consultative psychologist George Schultz, Ph.D.; and record reviewing physicians W. Jerry McCloud, M.D. and Teresita Cruz, M.D.  Doc. 11 at PageID 485-91.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  Treating physicians and psychologists top the hierarchy.  *Id*.  "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Id*.  "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id*.  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original).  This requirement is known as the "treating physician" rule.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted).  Greater deference is given to treating source

---

[8] With regard to Dr. Patil, ALJ Lombardo simply summarized Dr. Patil's opinion and quoted, *verbatim*, ALJ Bowen's conclusions regarding such opinion.  PageID 56, 104.  ALJ Lombardo's reference to Dr. Patil's opinion and ALJ Bowen's analysis of that opinion did not -- as set forth above -- amount to a constructive reopening of ALJ Bowen's conclusion.  *See King*, 90 F.3d at 325; *see also Walker v. Barnhart*, 258 F. Supp.2d 693, 699 (E.D. Mich. 2003).  No error occurred in this regard because, absent reopening, *res judicata* applied to ALJ Bowen's adjudication of Dr. Patil's opinion.  *See Drummond*, 126 F.3d at 842.

opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakely*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds that opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c). In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

Here, because ALJ Lombardo failed to consider the impact of Plaintiff's obesity on his ability to perform work, the undersigned finds error in the ALJ's assessment of medical source evidence and -- as previously determined -- the RFC determination. *See* SSR 02-1p, 2002 WL 34686281, at *6. On remand, the undersigned would direct the ALJ to consider the impact of Plaintiff's obesity in combination with other impairments, reassess all medical source opinions anew, and redetermine Plaintiff's RFC.

**D. Credibility**

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used[.]" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a); *Buxton*, 246 F.3d at 773; *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)). "First, the ALJ will ask whether . . . there is an underlying medically determinable . . . impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* (citation omitted).

Second, where the ALJ determines "that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's

14

ability to do basic work activities." *Id*. (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In considering the second part of the two-part analysis, the ALJ must consider a number of "[r]elevant factors," namely: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) other treatment undertaken to relieve symptoms; (6) other measures taken to relieve symptoms, such as lying on one's back; and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

With regard to credibility, the ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id*. To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*. To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*. This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

15

ALJ Lombardo determined that Plaintiff was less than credible.  PageID 63.  With regard to Plaintiff's physical capabilities, the ALJ's analysis is conclusory.  *Id*.  Despite noting Plaintiff's testimony "that he basically does nothing all day," the ALJ, nonetheless, concluded without further explanation, that "[e]vidence pertaining to the claimant's usual activities and his ability to function in the performance of routine tasks supports a finding that he remains quite capable of performing work involving the reduced range of medium exertion described" in the RFC.  PageID 63.  Further, the ALJ failed to consider Plaintiff's obesity and, therefore, whether such impairment lends support to his allegations of disabling symptoms.  *Id*.

While the ALJ's analysis concerning Plaintiff's mental capabilities is more significant, the undersigned, again, finds that the ALJ's failure to consider Plaintiff's obesity must result in a reassessment of his credibility concerning allegations of disabling mental impairments.  *See* SSR 02-1p, 2002 WL 34686281, at *3.  As noted in SSR 02-1p, "[o]besity may also cause or contribute to mental impairments such as depression[,]" the effects of which "may be subtle[.]"  *Id*.  Accordingly, on remand, the undersigned would direct the ALJ to consider Plaintiff's symptoms and determine his credibility anew.

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits.  Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990).  The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the

presentation of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this instance, evidence of disability is not overwhelming.  There are a number of divergent medical source opinions in the record regarding Plaintiff's RFC.  *See* PageID 357-64, 405, 432.  Accordingly, the undersigned concludes that remand for further proceedings is proper so that the ALJ can properly consider Plaintiff's obesity and its impact on his RFC.

### V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:   February 3, 2015                          *s/ Michael J. Newman*
                                                  Michael J. Newman
                                                  United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).